## GIROD v. BARBE. *
### No. 1550.

Court of Appeal of Louisiana. First Circuit.
May 8, 1936.

J. A. Williams, of Lake Charles, for appellant.

Cline, Thompson & Lawes, of Lake Charles, for appellee.

OTT, Judge.

The plaintiff, trustee in bankruptcy of the estate of Lionel A. Goudeau, seeks to recover from the defendant, Paul J. Barbe,

---

*Rehearing granted June 9, 1936.

the sum of $1,350 with legal interest thereon from December 5, 1913, until paid. It is alleged that said Goudeau paid said amount of $1,350 to the defendant on December 5, 1913, through mistake and error, believing that the amount was due the said defendant. The circumstances under which it is alleged that said payment was made may be briefly stated as follows:

On October 9, 1913, the defendant, Paul J. Barbe, advanced to his brother, Judge Alfred M. Barbe, some $1,800 to be turned over to Mrs. Henrietta E. Goudeau, nee Barbe, sister of said Paul J. and Alfred M. Barbe, and then the wife of said Lionel A. Goudeau, in order that this money might be used in refunding certain funds which had been improperly used by said Goudeau and in order to prevent a threatened prosecution against him. Mrs. Henrietta E. Goudeau transferred to Judge Alfred M. Barbe, as she and her husband understood as security for this advance, a certain tract of land, the separate property of Mrs. Goudeau. The greater part, if not all, of this money was used in settling these claims against Goudeau.

On December 5, 1913, Goudeau, as he alleges, went to Judge Alfred M. Barbe with a view of refunding a part of this loan, believing at the time that when the amount was refunded Judge Barbe would reconvey the property to Mrs. Goudeau. Judge Barbe informed Goudeau that the money had been advanced by Paul J. Barbe and suggested to Goudeau that he pay the amount to Paul J. Barbe. Goudeau accordingly paid defendant, Paul J. Barbe, the sum of $1,350 to apply on this loan. So far as the petition or evidence shows, the difference between the original amount advanced by defendant of $1,800 and the $1,350 was never paid to defendant by either Goudeau or his wife.

In 1922, Goudeau was adjudged a bankrupt, but this difference of $450 due Paul J. Barbe was not placed on his schedule as a liability, nor was the amount of $1,350 paid defendant placed on his schedule as an asset of his estate. Subsequently, Goudeau and his wife were divorced, and Goudeau obtained a judgment against his former wife on April 7, 1930, for something over $3,000. In an effort to execute that judgment against his former wife, Goudeau filed several proceedings in court in an attempt to subject to seizure the property which had been transferred to Judge Barbe by his former wife as security for the loan

referred to, but, after prolonged litigation, he was unsuccessful in this effort. However, it is now claimed by Goudeau's trustee in bankruptcy that Goudeau learned for the first time through testimony given by defendant in those suits that when he, defendant, accepted the $1,350 paid him by Goudeau on the original loan, that defendant had already been refunded the full amount of the loan by Judge Alfred M. Barbe, and this fact had been concealed from Goudeau.

It is the contention in the present case that as the amount was paid through mistake and error when nothing was due, Goudeau or his trustee is entitled to recover the amount so paid.

A plea of prescription was filed by defendant and sustained by the lower court. On appeal to this court the judgment was reversed and the case remanded. Girod v. Barbe, 153 So. 326.

Defendant filed an answer which is in effect a general denial. The testimony taken on the plea of prescription, together with some other testimony, was introduced on the trial of the case on the merits which trial resulted in a judgment for plaintiff. Defendant has appealed.

In rendering judgment for plaintiff, the learned trial judge stated that in doing so he was largely influenced by the findings of fact and the conclusions reached by this court in passing on the plea of prescription. In order to pass on the plea of prescription, it was necessary to discuss and determine whether or not Goudeau knew or had reason to know when he paid defendant the $1,350 in December, 1913, that defendant had then been repaid the amount due him on the original loan, and also to determine whether defendant had concealed from Goudeau the fact that the loan had been repaid when Goudeau made the payment to defendant which is now sought to be recovered.

There is no serious question about Goudeau having paid defendant $1,350 in December, 1913; in fact, defendant admits the payment in his testimony. The all important and decisive question in the case is whether or not, when Goudeau paid defendant the $1,350, defendant had at that time already been repaid the loan by Judge Barbe. It is true that this court in passing on the plea of prescription made the following statement on this point (153 So. 326, 327):

"The record shows, as far as we have found, that Alfred Barbe had paid approximately $1,650 in settlement of the claims then existing against Lionel A. Goudeau. However that may be, the evidence given by defendant, in the case above referred to, shows that in 1913 he had been paid in full when he accepted these $1,350 from Goudeau, for a loan which had been fully satisfied."

It is also true that this court in passing on the plea of prescription assumed that the testimony of defendant in the suit of Goudeau against his wife showed that Judge Barbe had already paid defendant the amount due him when Goudeau paid the $1,350. The majority of the court as presently constituted has reached a different conclusion on this point. Whether it was necessary to reach that conclusion in order to pass on the plea of prescription, it is not now necessary to discuss. Suffice it to say that the case is now before us on the merits, and in order to properly decide the case on the merits we must pass on this very vital point, however much the majority of the court as now constituted regrets the necessity of reaching a different conclusion on this point from that of the court as then constituted. The members of the court as then constituted, two of whom have since retired, gave the case thorough and conscientious consideration.

It will hardly be contended that either defendant or Judge Barbe testified in the present suit that when Goudeau paid defendant $1,350 in 1913 that Judge Barbe had then repaid the amount of $1,800 which defendant had advanced. The entire proof of plaintiff on this point must rest on the testimony of defendant and Judge Barbe in the former suit of Goudeau against his wife. Defendant testified twice in that suit, once on August 28, 1930, and again on August 4, 1931. A careful reading and study of defendant's testimony on both of those occasions fails to show where any proof can be drawn to support the conclusion that Judge Barbe had paid defendant the loan when Goudeau paid him the $1,350. As plaintiff is depending almost entirely on the testimony of the defendant on those two occasions to support his recovery, we feel justified in quoting freely from defendant's testimony on those occasions.

On August 28, 1930, defendant testified in the suit of Goudeau against Mrs. Roach, formerly Mrs. Goudeau, to the following effect: On being asked if he had an occasion, about the year 1913, to advance any money to his sister, Mrs. Roach, then Mrs. Goudeau, he answered as follows:

"A. About the year 1913, exact date of which I do not now recall—I advanced, or turned over to Alfred M. Barbe the sum of eighteen hundred dollars, more or less, to be used by him, in behalf of Mrs. Henrietta E. Goudeau, to settle certain claims in the hands of the District Attorney, of that date. This money was to be returned to me as soon as possible, and was to be raised by mortgage on certain land of Mrs. Henrietta E. Goudeau, called the "Little farm," and more fully described as being Lots 4, 5 and 6 of Block 4, Barbe Addition to the City of Lake Charles. After the money was turned over by me to the said Alfred M. Barbe, and during the negotiations to borrow the money on the above described property, it was found advisable to have the property deeded direct to Alfred M. Barbe, in order to avoid the legal possibility of the loan being affected by virtue of using the wife's property to pay the husband's debts. The land was deeded to Alfred M. Barbe."

Continuing the examination on this point, defendant testified as follows:

"Q. Have you since been repaid the amount that you advanced to Mrs. Roach?

"A. I have been repaid in full. About six months more or less after advancing the said $1800.00 to Alfred M. Barbe, Lionel A. Goudeau turned over to me some $1350.00 more or less, and the balance between Alfred M. Barbe and myself has long since been settled. However, after Mr. Lionel A. Goudeau turned over to me the $1350.00 more or less, it left him, or Mrs. Henrietta E. Goudeau, owing Alfred M. Barbe the difference between $1350.00 and $1800.00.

"Q. How was the difference between the $1800.00 and some odd dollars more or less that you had advanced to Mrs. Goudeau, and the $1350.00 which I paid you, how was it settled between you and Alfred M. Barbe?

"A. By Compensation."

The only deduction that can be made from this testimony of defendant is to the effect that he turned over to his sister, then the wife of Goudeau, through his brother, Judge Barbe, the sum of $1,800; that shortly thereafter Goudeau paid him $1,350 to apply on the original loan, and the balance—that is the difference between $1,800 and this $1,350—had been settled be-

tween himself and Judge Barbe in the settlement of accounts between themselves. Nowhere does he testify that Judge Barbe had paid him the whole loan of $1,800, but only the balance after allowing for the $1,350 paid by Goudeau. He continues to refer to this balance in his other testimony on that occasion, which he says is the difference between the $1,350 and $1,800, plus certain taxes paid by Judge Barbe on the property.

Almost a year later, August 4, 1931, defendant was again called as a witness in this suit of Goudeau against his former wife. It is apparently from an isolated and rather indefinite statement made by defendant in his testimony on that occasion that plaintiff now hopes to hang the proof necessary in his suit to the effect that when Goudeau paid defendant the $1,350 Judge Barbe had already paid defendant the full amount of the original loan of $1,800. Mr. Goudeau was himself interrogating defendant as a witness and, after asking about the purpose of the loan, the testimony continues:

"Q. Did you know what that money was being used for, Mr. Barbe?

"A. I knew full well what that money was used for. I knew the circumstances arising out of it and the necessity of getting the money. I let him have it and the understanding was that the money was to be repaid in a short while. In order to raise that amount Alfred M. Barbe was to get a deed from Mrs. Goudeau for forty acres of land and return the money and that money was afterwards returned to me by Alfred M. Barbe within six months. And after that L. A. Goudeau paid me some thirteen hundred dollars. I kept that money a good while. There were different accounts between Alfred M. Barbe and I and there have always been different money variances in the family. He had claims against me, and I had claims against him. That money was kept until about 1918. Then at that time Alfred M. Barbe sold some timber to Mr. King. I believe it was to Mr. King on our land at Rose Bluff. He has eighty acres down there and so have I. He kept the proceeds of that sale for the difference between us.

"Q. And that completed a settlement, the balance between the thirteen hundred and fifty dollars paid and the amount you had actually given to Mrs. Roach?

"A. It settled that and other differences which may have been between us. Now, I never did know what the value of the timber was that he sold. But I know since then on many and various occasions that Alfred M. Barbe has asked me and so has Lionel A. Goudeau what the difference was between the thirteen hundred dollars and the eighteen hundred dollars so they could figure the difference that L. A. Goudeau owed Alfred on that place. That came up a dozen different times, in order to get the deed back."

Standing alone and without considering the other quoted testimony, it does appear that defendant made the clear statement, "In order to raise that amount Alfred M. Barbe was to get a deed from Mrs. Goudeau for forty acres of land and return the money and that money was afterwards returned to me by Alfred M. Barbe within six months. And after that L. A. Goudeau paid me some thirteen hundred dollars. I kept that money a good while." Now if we stop there the testimony does appear to support the plaintiff's contention on this point, but reading the remainder of the testimony quoted not only fails to show that Judge Barbe had paid the full amount of the loan to defendant when Goudeau paid the $1,350, but, on the contrary, coincides with defendant's testimony of August 28, 1930, to the effect that Judge Barbe paid him the balance over and above the $1,350. Indeed that is exactly what defendant said after telling how the settlement between himself and Judge Barbe was made in a timber deal, for on being asked the precise question if that timber deal did not settle the balance between the $1,350 and the amount he had actually given Mrs. Goudeau, he answered that it settled that difference. The remainder of his quoted testimony continues to refer to this balance or difference. What difference or balance? It could refer to no other balance or difference except that between what Goudeau had paid defendant and the full amount due of some $1,800. Any other construction of defendant's testimony on these two occasions would not only render it meaningless, but absolutely unintelligible.

We do not think that it will be seriously contended that Judge Barbe has anywhere testified that he paid defendant the full amount of the $1,800. We are not now concerned with the controversy relative to the retransfer of the property by Judge

Barbe. It remains a fact that the testimony does not prove that the defendant had already received the full amount due him when he was paid the $1,350 by Goudeau.

Articles 2301 and 2302 of the Civil Code read as follows:

"Art. 2301. *Obligation to Restore Thing Unduly Paid.* He who receives what is not due to him, whether he receives it through error or knowingly, obliges himself to restore it to him from whom he has unduly received it."

"Art. 2302. *Right to Recover Thing Unduly Paid.* He who has paid through mistake, believing himself a debtor, may reclaim what he has paid."

Article 18 Code of Practice reads as follows:

"He who pays through error what he does not owe, has an action for the repetition of what he has thus paid, unless there was a natural obligation to make such payment; but he must prove that he paid through error, otherwise it shall be presumed that he intended to give."

Plaintiff has not overcome the burden resting on him to prove that the payment was made in error and that the payment was not due.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment of the district court be and the same is hereby annulled, avoided, and reversed, and it is now ordered that the demands of the plaintiff be dismissed at his cost in both courts.

LE BLANC, Judge (dissenting).

For the reason that I am still convinced of the correctness of the former opinion and decision handed down by this court when it had to pass on the facts in order to decide the plea of prescription, I find myself constrained to disagree with the present opinion rendered by a majority of the court. The former opinion is reported in 153 So. at page 326.

I had never understood that the fact whether Judge Alfred Barbe had ever repaid his brother, Paul Barbe, the defendant herein, the sum of money advanced by the latter and which was the amount Judge Barbe had put up for Goudeau, was an issue in the case and neither do I believe that any one connected with it thought so, until it was raised by the court in the present hearing. And still that is the issue on which the opinion is now based. The court had formerly accepted the defendant's own statement, as now quoted in the majority opinion, that *"that money [had been] returned to me by Alfred M. Barbe within six months."* (Italics mine.) All the attempted explanations relative to the difference between the amount and the amount paid him by Goudeau, about these matters "having been settled in the family," cannot, in my opinion, overcome this positive admission on the part of the defendant.

I agree with the statement in the majority opinion that we are not now concerned with any controversy with regard to the transfer or retransfer of the former Mrs. Goudeau's property, which was to stand as security for the advances made to Goudeau. We can, however, consider what testimony there is in the record relative to the same, as one of the many facts and circumstances, in weighing the entire evidence on the real issue that is presented in the case, and when we do so, we find that as a result of these transactions, as far as the record discloses, that Judge Alfred Barbe now owns the property; that he has paid and settled all accounts with Paul Barbe who had advanced him the money so that he could turn it over to Goudeau; and that, in addition, Paul Barbe still has the $1,350 which Goudeau paid him without knowing that he had been paid by Judge Barbe.

What additional testimony was adduced on the remand of the case after the plea of prescription had been overruled, besides being of doubtful admissibility, has not served to change my opinion in the conclusion which this court first reached, that when Paul Barbe accepted the $1,350 from Goudeau, in part payment of the money he had advanced, he obtained a double payment which was made by error and mistake and under a misapprehension of the true facts, and therefore the trustee of Goudeau's estate in bankruptcy is entitled to recover the same.